# EXHIBIT

# 2

CASE NUMBER: 655791 - NYC: 297770

## FINDINGS OF FACT AND DECISION

Case Number:                                297770
Student's Name[1]:                          ███████████████ Student")
Date of Birth:                              January 21, 2015
School District:                            NYC Department of Education ("DOE")
Hearing Requested by:                       Keisha Archibald ("Parent")
Request Date/Date Complaint Filed:          July 18, 2025
Date(s) of Hearing:                         September 15, 2025
                                            September 17, 2025
                                            September 24, 2025

Actual Record Closed Date:                  October 8, 2025
Date of Decision:                           October 14, 2025
Time Sensitive                                      No
Hearing Officer:                            Joshua H. Arocho, Esq.

---

[1] Personally identifiable information is attached as Appendix A, "Redaction Identification Page," to this decision and must be removed prior to public distribution.

Hearing Officer's Findings of Fact and Decision
Case No. 297770

**NAMES AND TITLES OF PERSONS WHO APPEARED ON September 15, 2025**

For the Student:

Marina Ali, Parent Representative

For the Department of Education:

Mitchell Poirier, Esq.
Elizabeth Delianites, School Psychologist

**NAMES AND TITLES OF PERSONS WHO APPEARED ON September 17, 2025**

For the Student:

Marina Ali, Parent Representative
Caleb Asomugha, Deputy Director of Special Education, iBrain

For the Department of Education:

Mitchell Poirier, Esq.

**NAMES AND TITLES OF PERSONS WHO APPEARED ON September 25, 2025**

For the Student:

Marina Ali, Parent Representative

For the Department of Education:

Mitchell Poirier, Esq.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On July 18, 2025, Parent filed a Due Process Complaint ("DPC"), Ex. A, under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(f), and its State and Federal implementing regulations against the New York City Department of Education ("DOE"). Parent asserted that the DOE deprived Student of a Free Appropriate Public Education ("FAPE") by failing to provide her with an appropriate public school placement. *See generally* Ex. A. Ultimately, Parent seeks an order directing the DOE to provide funding for (1) Student's placement at Private School for the 2025–26 school year; (2) transportation to and from Private School; (3) nursing services; (4) assistive technology devices; and (5) independent evaluations. *Id.* at 11–12.

A Due Process Hearing ("DPH") was held over the course of three days in September 2025. Parent sought to introduce 11 documents in support of her case, including one affidavit.[2] The DOE sought to introduce 23 documents in support of its case, including one affidavit. All of the proposed exhibits were admitted to the record,[3] Tr. at 21:1–26:9, and this matter is now ripe for review.

In light of the foregoing and as more fully discussed below, I find that Parent's refusal to testify in this matter notwithstanding lawful orders to do so has frustrated the impartial hearing process to an intolerable degree. Because she persists in her refusal to testify with full knowledge of the potential consequences for doing so, her claims will be **DISMISSED WITH PREJUDICE**.

## II.  FINDINGS OF FACT AND ANALYSIS

School districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement. N.Y. Educ. Law § 4404(1)(c). Tuition reimbursement is appropriate where (1) the proposed IEP fails to provide the student with a FAPE; (2) the private placement is appropriate to meet the student's unique needs; and (3) equitable considerations support the claim for reimbursement. *Reyes v. New York City Dep't of Educ.*, 760 F.3d 211, 215 (2d Cir. 2014); *see also Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S 7, 12 (1993)*; Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370–74 (1985). These prongs, taken together, are commonly referred to as the "*Burlington/Carter* standard."

As a preliminary matter, however, the parties disagree as to Student's proper placement under 20 U.S.C. § 1415(j). I will first address this issue, followed by a discussion of Parent's vexatious litigation conduct and its effects on these proceedings.

### A. Pendency

The IDEA and New York State Education Law require that a student remain in his or her then-current educational placement, unless the student's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation, or placement of the student. 20 U.S.C. § 1415(j); N.Y. Educ. Law §§ 4404(4); 34 C.F.R. § 300.518(a); 8 NYCRR § 200.5(m);

---

[2] Parent Representative withdrew proposed Exhibit L. Tr. at 99:10–15.

[3] Various briefs and emails are also part of the record in this matter and are referenced in this FOFD as IHO Exhibits.

Hearing Officer's Findings of Fact and Decision
Case No. 297770

---

*see also Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006). Pendency has the effect of an automatic injunction, and the party requesting it need not meet the requirements for injunctive relief such as irreparable harm, likelihood of success on the merits, and a balancing of the hardships. *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

Although not defined in the IDEA, "then-current educational placement" typically means:

(1) the placement described in the child's most recently implemented IEP;
(2) the operative placement functioning at the time . . . when the stay put provision of the IDEA was invoked; or
(3) the placement at the time of the previously implemented IEP.

*Mackey v. Bd. of Educ. for the Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004) (internal quotation marks and citations omitted); *see also Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (holding that a student's entitlement to stay-put arises when a due process complaint notice is filed); *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014) (holding that the pendency provision "requires a school district to continue funding whatever educational placement was last agreed upon for the child"). A prior unappealed IHO decision may also establish a student's current educational placement for purposes of pendency. *Abrams v. Carranza*, 2019 U.S. Dist. LEXIS 95403 at *8 (S.D.N.Y. June 6, 2019). Finally, "placement" refers not just to a student's classroom setting, but also to their related services. *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 453 (2d Cir. 2015) ("[T]he IDEA defines 'free appropriate public education' to include 'special education *and related services*.'") (quoting 20 U.S.C. § 1401(9)) (emphasis in original); Letter to Baugh, 211 IDELR 481 (OSEP 1987) ("The term 'present educational placement' . . . would generally be taken to mean the current education *and related services* provided in accordance with the child's most recent individualized education program.") (emphasis added).

Parent contends that Student's pendency placement lies in the program articulated in the September 12, 2024 Pendency Order issued in Case No. 277153. *See* Ex. IHO-A at 2. That order directed the DOE to fund Student's placement at Private School as well as transportation and nursing services. Ex. IHO-B at 5–6. The DOE, however, argues that Student's pendency program excludes nursing services and is based on the FOFD in Case No. 228692. Ex. IHO-C at 2; *see also* Ex. 1.

Parent's position is untenable for two reasons. First, it is well-established that

a pendency decision in one proceeding may not serve as the basis for pendency in a future proceeding because, in order to represent an agreement between the parties, the unappealed decision upon which pendency may be based must be a decision on the merits, including a determination of the appropriateness of the unilateral placement.

*Appeal of a Student with a Disability*, Case No. 20-165 at 8 (New York State Education Department Office of State Review Dec. 18, 2020).[4] Second, the September 12, 2024 Pendency Order was itself modified on appeal in SRO 24-545 to exclude funding for nursing services. *See* Ex. 4 at 13 ("Based on the above, the IHO's interim order on pendency must be modified to accurately reflect the SRO's decision in Application

---

[4] Moving forward, SRO decisions will be cited to using the following shortened format: SRO [Case #] at [page] (date).

Hearing Officer's Findings of Fact and Decision
Case No. 297770

of a Student with a Disability, Appeal No. 24-028. Review of that decision shows that the student's pendency consists of base tuition at [Private School] and transportation services.").

The SRO's ruling in Case No. 24-525 renders Parent's submission in this matter incomplete at best and intentionally misleading at worst. Upon review of the parties' submissions and applicable case law, I see no reason to disturb the SRO's reasoned conclusion that pendency lies in the program articulated in SRO 24-028, that is, base tuition at Private School[5] plus transportation.[6] *See id.* at 10–13; *see also* Ex. 3 at 14–15. Accordingly, the DOE will be ordered to fund Student's placement at Private School and to provide or otherwise fund her transportation thereto for the duration of any appeals from this Order.

B. Parent's Litigation Conduct

On August 19, 2025, DOE Representative submitted for my consideration a subpoena for Parent's testimony and three third-party document subpoenas. Ex. IHO-D at 4–5; Ex. IHO-E (Parent Testimony Subpoena); E. IHO-F (Private School Document Subpoena); Ex. IHO-G (Transportation Agency Document Subpoena); Ex. IHO-H (Nursing Agency Document Subpoena). After considering Parent's response in opposition,[7] Ex. IHO-D at 1–3, I signed all four subpoenas on August 25, 2025 with slight modifications to one of the third-party document subpoenas.[8] The parties proceeded to brief the above-discussed pendency issue ahead of the scheduled DPH.

Four days before the first day of the DPH, DOE Representative inquired via email whether Parent would be testifying pursuant to the subpoena. Ex. IHO-I at 2. That same day, Parent Representative 2 informed us that Parent would not be testifying, *id.* at 1, and filed a document entitled "Parent's Objection's [sic] to Issuance of Subpoena" that largely reiterated the arguments I had already rejected. *See* Ex. IHO-J. I subsequently styled this document as a Motion for Reconsideration, which was denied summarily as untimely under my individual rules and as improperly filed because Parent Representative 2 had not yet entered a Notice of Appearance.[9] *See supra* Part II.B n.7; *see also* Ex. IHO-I at 1 (Order

---

[5] The DOE's reliance on *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519 (2d Cir. 2020) for a reduction in tuition funding during the pendency of these proceedings is misplaced. In Ventura *DePaulino*, the Second Circuit considered a situation in which a parent sought to have pendency services provided in a new school that charged substantially higher tuition than the original school. *Id.* at 535. That is simply not the case here as Student has been enrolled at Private School at all times relevant to this litigation.

[6] The DOE correctly relies on *Ventura de Paulino* for the proposition that it retains discretion to implement Student's pendency program as it sees fit, so long as that discretion is exercised "in good faith." *Ventura de Paulino*, 959 F.3d at 534. Accordingly, should the DOE choose to do so, it is free to provide appropriate transportation to Student directly rather than funding Student's third-party transportation.

[7] At the time this response was filed, Parent Representative 2, a law clerk, had not yet entered her notice of appearance. In my Order granting the DOE's subpoena requests, I informed Parent Representative 1 that "while it is your prerogative to delegate assignments as you see fit, moving forward, when I ask you for a response, I expect that response to come from you or from one of the several counsel of record in this matter." Ex. IHO-D at 1.

[8] Parent Representative 2 claimed that "the Parents do not take a position on third-party subpoenas," but then immediately proceeded to argue extensively against the issuance of said subpoenas. *See* Ex. IHO-D at 2–3. While Parent has no standing to contest these third-party subpoenas, I struck the portions thereof that I found overly broad or unduly burdensome. *See id.* at 1. At any rate, the third-party document subpoenas are not at issue in this FOFD, though DOE Representative did note for the record that neither Transportation Agency nor Nursing Agency responded to those subpoenas. Tr. at 162:15–19.

[9] Parent Representative 2 entered her Notice of Appearance shortly after I issued my order.

Hearing Officer's Findings of Fact and Decision
Case No. 297770

Denying Motion for Reconsideration); Ex. IHO-K (individual rules providing that all motions submitted fewer than 10 calendar days prior to hearing will be denied summarily). In that Order, I directed Parent Representative 2 "to gather the parent's availability and be prepared to discuss when she can testify at the conclusion of Monday's proceedings." Ex. IHO-I at 1.

Parent Representative 2 did not gather Parent's availability. Instead, when I made clear at the beginning of the DPH that I expected Parent to testify and asked whether she would be available on day two of our hearing, she stated: "I cannot confirm at this time, but I do not believe the parent intends to testify." Tr. at 26:23–24. The parties proceeded to set forth their arguments regarding service of the subpoena, which will be discussed in greater detail *infra*. Ultimately, however, I ruled that the subpoena was properly served and, independently of that subpoena, I ordered Parent to appear to answer my questions. *Id.* at 30:24–31:7 ("I personally have questions for the parent . . . so I am personally asking for the parent to appear."). I then advised Parent Representative 2 that I would draw a negative inference if Parent did not testify. *Id.* at 31:7–11 ("And ruling number 3, there will be a negative inference if the parent does not appear . . . So, [Parent Representative 2], you are more than welcome to stand on your position that the parent won't be testifying here. Just know that there will be consequences to that."). At the conclusion of day one of the DPH, I ordered Parent Representative 2 to consult with her client regarding the implications of her failure to testify and to email DOE Representative and me by the end of the day to let us know Parent's decision (or simply to let us know that she was unable to reach Parent). Tr. at 93:1–19.

Parent Representative 2 did not send an email by the end of the day. In response to my email informing her that she failed to comply with my directive, Parent Representative 2 sent an email on September 16, 2025 in which she reiterated her arguments regarding the DOE's subpoena that I already rejected twice and questioned my independent authority to compel Parent's testimony, claiming that she was "not aware of any statute, regulation, or case law granting such authority to an IHO." *See* Ex. IHO-L at 3–4. As with the allegedly improper service of the subpoena, Parent Representative 2's ignorance of the law will be discussed in greater detail *infra*. I treated Parent Representative 2's September 16, 2025 email as a Second Motion for Reconsideration, which I addressed on the record on September 17, 2025. Specifically, I ruled that

> what I've styled as the second motion for reconsideration is denied. [Parent Representative 2], when I make a ruling with which you disagree, your recourse is to appeal, not to engage in endless motion practice. To the extent you believe I've abused my discretion, it is within your rights to, and I don't say this facetiously at all, make a federal case of it. On substance and as is – as is outlined quite clearly in SRO 25-021, the DOE has the right to compel the parent's testimony in this matter. I have the right to issue a subpoena for said testimony. And I'll remind you that and I'm quoting now "The parties to an impartial hearing are obligated to comply with the reasonable directives of the IHO regarding the conduct of the impartial hearing" and that's from SRO 25-021 at page 17. As I stated when I originally signed the subpoena, the parent has relevant information regarding Prongs 2 and 3 of the Burlington/Carter standard. And after hearing testimony on day one of the due process hearing on Monday, I believe that the parent also has information that is not only relevant but central to my determination of [whether] the DOE offered a FAPE under Prong 1 of the Burlington/Carter standard.

Tr. at 162:25–163:20. I then advised Parent Representative 2 that if Parent did not comply with my orders, "I will be taking an adverse inference, which may range anywhere from finding facts in the District's favor, *all the way up to dismissal of this matter with prejudice.*" *Id.* at 164:7–11 (emphasis added). Fully aware of the potential consequences, Parent Representative 2 confirmed that Parent would not be testifying. *Id.* at 164:11–13.

For the fourth and final time in this case, I will address Parent Representative 2's claim that Parent need not testify. Her primary arguments are: (1) the DOE has not justified the need for Parent's testimony and is engaged in a fishing expedition; (2) the subpoena was not properly served on Parent; and (3) I do not have authority to compel Parent's testimony. Each will be disposed of in turn.

Parent Representative 2's first argument warrants little discussion. There is not a single person in the universe with more relevant information to this case than Parent, and any argument to the contrary is patently frivolous. For example, School Psychologist credibly testified that Parent did not provide essential medical forms to the DOE despite a reasonable request for same. Tr. at 87:23–88:1. Who better than Parent herself to answer questions about whether she subsequently sent those documents? Parent's conduct during the evaluation process is clearly relevant to prong 3 of the *Burlington/Carter* standard as her malfeasance at that stage could justify a complete denial of relief. *See, e.g.*, *Ferreira v. Aviles-Ramos,* 120 F.4th 323, 334–35 (2d Cir. 2024). Further examples abound, but I need not belabor the point; suffice it to say that Parent's knowledge about her daughter's education would assist me in making a reasoned decision in this matter.

Next, the argument that the DOE improperly served Parent is based on the mistaken premise that personal service is required at the impartial hearing level. While both the Federal Rules of Civil Procedure ("FRCP") and the New York Civil Practice Laws and Rules ("CPLR") require personal service of subpoenas, *see* Fed. R. Civ. P. 45(b); CPLR § 2303(a), no such rule applies in this Court. Rightfully so. Unlike in adversarial proceedings in state or federal court, the IDEA envisions a collaborative process in which parents and school districts are expected to work together to develop appropriate educational programs and, where necessary, to resolve conflict through the impartial hearing process. *See, e.g.*, 20 U.S.C. § 1415(f)(1)(B) (requiring parties to engage in a resolution session prior to the beginning of the formal hearing process).[10] Here, there can be no argument that Parent Representative 2 did not receive the subpoena as I emailed it to her, we discussed it at length on the record, and the DOE delivered it to Parent Representative 2's firm via certified mail. *See* Ex. 16; Ex. 17. Accordingly, Parent, through counsel, had ample notice of the subpoena. Parent Representative 2's dogmatic insistence on adherence to rules that simply do not apply in this Court do not excuse Parent's failure to engage in the IDEA's collaborative dispute resolution process.

Finally, and independently of the duly executed and served subpoena discussed above, Parent Representative 2 has offered no authority in support of the proposition that I cannot compel Parent's testimony. Nor could she. State regulations governing these proceedings make clear that: (1) all parties have the right to "compel the attendance of witnesses," 8 NYCRR § 200.5(j)(3)(xii); (2) I have the right "to ask questions of counsel or witnesses for the purpose of clarification or completeness of the record," 8 NYCRR § 200.5(j)(3)(vii); and (3) I have the right to issue subpoenas. 8 NYCRR § 200.5(j)(3)(iv). Even if actions in this Court were governed by the FRCP or CPLR, I am unaware of any requirement in either

---

[10] The DOE failed to hold a resolution session within the mandated 15 days of filing of the DPC. When the DOE offered to hold a meeting 24 days after the filing of the DPC, Parent declined and chose to move forward to hearing. *See* Ex. IHO-M.

of those sets of rules that compels *me* to effectuate personal service of a subpoena on Parent for *my* questions. To the contrary, the SRO has consistently held that "the parties to an impartial hearing are obligated to comply with the reasonable directives of the IHO." *See, e.g.*, SRO 25-021 at 17 (July 30, 2025). Parent Representative 2's ignorance of my authority to compel Parent's testimony, whether it be feigned or sincere, is all the more unreasonable given the express holding in SRO 25-021 that I do have such authority, *see id.* at 14–18, *and that Parent Representative 2's law firm was counsel of record in that case*. In short, because the weight of authority suggests—indeed, holds—that I can order Parent to testify, Parent Representative 2's final argument is without merit.

Having established that Parent improperly refused to comply with a lawfully executed and served subpoena and my direct order, I must now determine an appropriate sanction. As discussed *supra* and throughout the hearing process, I find that Parent has information that is central to all three prongs of the *Burlington/Carter* standard. That information includes, but is not limited to, her discussions with the DOE regarding medical documentation (prongs one and three), the day-to-day operations of Transportation Agency ad Nursing Agency with regards to Student's services (prong two), and her receipt of the DOE's school placement letter (prong one). Absent Parent's testimony, the DOE was unable to put on a full and fair defense, and the record remains incomplete. Because Parent's refusal to testify is the sole cause of these unfortunate circumstances, and because she was warned of the consequences of her continued refusal to testify, her claims will be **DISMISSED WITH PREJUDICE**.

While the FRCP are not applicable here, Fed. R. Civ. P 41(b) provides instructive guidance.[11] Fed. R. Civ. P. 41(b) provides that an action may be dismissed if the plaintiff fails to comply with a court order.[12] Courts analyzing such dismissals consider five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Park v. Kim*, 91 F.4th 610, 612–13 (2d Cir. 2024) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)). Dismissal is warranted under *Park*. First, Parent has steadfastly refused to testify throughout the entire course of this litigation. Second, I explicitly informed Parent Representative 2 that Parent's continued refusal to testify may result in dismissal with prejudice. Tr. at 164:7–11. The third factor is inapplicable as Parent refused to testify through the conclusion of the DPH. The fourth factor is similarly inapplicable because the DPH has concluded, and this matter, as of the signing of this FOFD, is no longer a burden on my docket. I will note, however, that Parent was given ample opportunity to comply with my directives. Furthermore, Parent, unlike the DOE, was afforded a full and fair opportunity to present her case. *See generally* Tr. Finally, I find that any sanction less drastic than dismissal with prejudice would

---

[11] The irony of my reliance on the FRCP in support of dismissal of Parent's claims is not lost on me. To be clear, the basis for dismissal is my inherent authority to manage the hearing process under State regulations. *See generally* 8 NYCRR § 200.5. My analysis under Fed. R. Civ. P 41(b) and *Park* is meant to serve as a check against that broad authority using a plaintiff-friendly standard borrowed from a tribunal with more structured rules.

[12] Fed. R. Civ. P. 41(b) requires a motion from the defendant. Here, DOE Representative moved to dismiss Parent's claims in his closing statement. *See* Tr. at 177:4–7, 187:20–23.

(1) impliedly bless Parent's attempt to prevent the DOE from defending itself; and (2) force me to speculate as to facts that control the outcome of this case.[13] The former would be unduly prejudicial to the DOE and encourage further gamesmanship. The latter would reduce my role to guesswork and reflect poorly on this Court. I refuse to endorse any of these outcomes.

I make no findings of fact or conclusions of law regarding prongs one, two, or three of the *Burlington/Carter* standard.

### III.    CONCLUSION AND ORDER

The IDEA provides dozens of procedural and substantive rights to parents of students with disabilities. *See generally* 20. U.S.C. § 1400 *et seq.* Conspicuously absent from these enumerated rights is the ability to frustrate the impartial hearing process with impunity. Parent, having refused to comply with a duly executed subpoena and a lawful order to testify, has prevented the DOE from presenting its case and this Court from rendering a decision based on a complete record. Due process demands more.

For the reasons stated herein, it is hereby **ORDERED** that:

(1) all claims in this action are **DENIED** and **DISMISSED WITH PREJUDICE**; and

(2) for the duration of any appeals from this Order, and retroactive to the July 18, 2025 filing of Parent's DPC, the DOE shall fund Student's placement at Private School and shall provide or otherwise fund her transportation thereto.

**SO ORDERED**

DATED: October 14, 2025

*/s/ Joshua H. Arocho*
Joshua H. Arocho
Impartial Hearing Officer

---

[13] I strongly considered taking an adverse inference against Parent in the form of finding facts in favor of the DOE. Ultimately, however, I find this to be inappropriate because at this stage it is impossible for me to know the full range of information known to Parent. Said another way, I am left to guess what facts I should find in the DOE's favor. Because I am in the business of making decisions based on evidence and not conjecture, I decline to issue this lesser sanction.

Hearing Officer's Findings of Fact and Decision
Case No. 297770

## NOTICE OF RIGHT TO APPEAL

Within 40 days of the date of this decision, the parent and/or the Public-School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

Hearing Officer's Findings of Fact and Decision
Case No. 297770

## APPENDIX A – REDACTION IDENTIFICATION PAGE

| Term Used In FOFD | Redacted Information |
| --- | --- |
| Student | ███████████ |
| Parent | Keisha Archibald |
| Parent Representative 1 | William Oldfield, Esq. |
| Parent Representative 2 | Marina Ali |
| District Representative | Mitchell Poirier, Esq. |
| Private School | International Academy for the Brain ("iBRAIN") |
| Deputy Director of Special Education | Caleb Asomugha |
| School Psychologist | Elizabeth Delianites |
| Transportation Agency | Sisters Travel and Transportation Services, LLC |
| Nursing Agency | B&H Health Care Services |

Hearing Officer's Findings of Fact and Decision
Case No. 297770

## APPENDIX B – DOCUMENTATION ENTERED INTO THE RECORD

**PARENT EXHIBITS**

| Exhibit | Document | Date | Pages |
|---------|----------|------|-------|
| A. | DPC and Associated Documentation | Various | 71 |
| B. | Private School Report and Education Plan | 7/9/2025 | 59 |
| C. | IEP | 2/27/2025 | 45 |
| D. | MAF 25-26 | 8/19/2025 | 17 |
| E. | Letter to CSE | 3/30/2025 | 9 |
| F. | Progress Report Q1 | 10/25/2024 | 25 |
| G. | Progress Report Q2 | 1/10/2025 | 27 |
| H. | Progress Report Q3 | 3/28/2025 | 23 |
| I. | Progress Report Q4 | 6/26/2025 | 24 |
| J. | SOPM | Undated | 124 |
| K. | Affidavit of Deputy Director of Special Education | 9/5/2025 | 6 |
| L. | Withdrawn | | |

**DOE EXHIBITS**

| Exhibit | Document | Date | Pages |
|---------|----------|------|-------|
| 1. | FOFD 228692 | 10/20/2022 | 13 |
| 2. | Pendency Order 277153 | 9/12/2024 | 2 |
| 3. | SRO 24-028 | 4/3/2024 | 15 |
| 4. | SRO 24-545 | 4/8/2025 | 23 |
| 5. | FOFD 277153 | 5/30/2025 | 14 |
| 6. | FOFD 250848 | 12/11/2023 | 19 |
| 7. | Letter from OPT | 6/18/2025 | 1 |
| 8. | Meeting Notice | 2/4/2025 | 3 |
| 9. | IEP | 2/27/2025 | 45 |
| 10. | Classroom Observation | 1/20/2023 | 2 |
| 11. | Vineland Adaptive Behavior Scales, Third Edition | 1/15/2023 | 26 |
| 12. | Social History Update | 2/24/2025 | 3 |
| 13. | Email to Parent | 6/11/2025 | 1 |
| 14. | PWN and SLL | 6/11/2025 | 16 |

Hearing Officer's Findings of Fact and Decision
Case No. 297770

| 15. | Affidavit of School Psychologist | 9/5/2025 | 6 |
|---|---|---|---|
| 16. | Certified Mail Receipt | Undated | 1 |
| 17. | USPS Tracking | 9/5/2025 | 2 |
| 18. | Email service of Subpoena | 8/26/2025 | 1 |
| 19. | Email to Transportation Agency | 8/26/2025 | 1 |
| 20. | Student Attendance | 9/4/2025 | 1 |
| 21. | Student Schedule 2025-2026 School Year | 7/9/2025 | 1 |
| 22. | Private School Founder's Story | 8/26/2025 | 11 |
| 23. | Private School Report and Education Plan | 2/13/2025 | 74 |

## IHO EXHIBITS

| Exhibit | Document | Date | Pages |
|---|---|---|---|
| IHO-A | Parent's Pendency Brief | 8/29/2025 | 7 |
| IHO-B | Parent Pendency Exhibits | Various | 42 |
| IHO-C | Pendency Brief for the Department of Education | 9/8/2025 | 11 |
| IHO-D | Order Granting DOE Motion for Subpoenas | 8/25/2025 | 7 |
| IHO-E | Parent Testimony Subpoena | 8/25/2025 | 1 |
| IHO-F | Private School Document Subpoena | 8/25/2025 | 3 |
| IHO-G | Transportation Agency Document Subpoena | 8/25/2025 | 2 |
| IHO-H | Nursing Agency Document Subpoena | 8/25/2025 | 2 |
| IHO-I | Order Denying Motion for Reconsideration | 9/12/2025 | 5 |
| IHO-J | Parent's Objection's [sic] to Issuance of Subpoena | 9/11/2025 | 5 |
| IHO-K | Arocho Individual Rules | 7/2025 | 2 |
| IHO-L | Email re Second Motion for Reconsideration | Various | 4 |
| IHO-M | Order Denying Motion to Accelerate Hearing Timeline | 8/12/2025 | 5 |
| IHO-N | Order Denying Consolidation | 7/22/2025 | 1 |